# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT JEFFREY JOHNSON,

    Defendant.

Case No. 2:10-CR-223
JUDGE GREGORY L. FROST

## ORDER

This matter came on for consideration upon Defendant's Motion to Dismiss Count One of the Indictment (ECF No. 44.), and the Government's Response in Opposition to Motion to Dismiss Count One of the Indictment. (ECF No. 59.)

For the reasons that follow, the Court finds Defendant's Motion to Dismiss Count One of the Indictment without merit and the Court **DENIES** the same.

### I. NATURE OF THE CHARGES IN COUNT ONE OF THE INDICTMENT

Defendant was indicted on August 24, 2010 by a grand jury for committing bank fraud in violation of 18 U.S.C. § 1344. The Indictment charges that Defendant "willfully and knowingly devised and intended to devise a scheme and artifice to defraud federally insured financial institutions" including the First Merit Bank and JP Morgan Chase Bank. (Indictment, R. 3, Count 1, ¶¶ 4, 11.) It is charged that Smith & Johnson Construction Company, of which Defendant is president, obtained five business loans totaling $20,750,000 from First Merit Bank.(*Id.* at ¶¶ 1, 3.) Defendant personally signed for each of the five loan agreements, the

1

earliest of which is dated December 20, 2004 and the last of which is dated October 7, 2005. (*Id.* at ¶ 3.)

The Indictment charges Defendant of committing the following overt acts as part of his scheme to defraud: First, Defendant transferred the loaned funds totaling $7,003,870.32 from Smith & Johnson to himself and to other business entities controlled by Defendant, or in association with Smith & Johnson, during fiscal years 2004 and 2005. (*Id.* at ¶ 5.) Second, Defendant used the transferred funds received from Smith & Johnson to purchase vehicles, and then sold those vehicles with the proceeds going to himself or to representatives of Defendant. (*Id.* at ¶ 7.) Third, Defendant incorporated Zorn Express, Inc. in July 2005 for the purpose of facilitating the purchase of a condominium in Miami, Florida, using the funds secured from First Merit Bank. (*Id.* at ¶ 8.) Defendant caused the transfer of funds from an account with JP Morgan Chase Bank to another account with Mellon United National Bank in order to cover the closing costs of the purchase of the condominium. (*Id.* at ¶ 11.) Lastly, Defendant entered into an agreement with Thurman Equipment in February 2006, in which Thurman agreed to purchase Smith & Johnson's equipment. (*Id.* at ¶ 10.) Thurman received $1,694,675.33 from the sale of Smith & Johnson equipment; and then, between the months of March 2006 - December 2006 transferred $1,507,980.00 to the brother of Defendant as well as other business entities. (*Id.*)

Collectively, these acts as alleged in Count One of the Indictment constitute the Defendant's scheme to defraud in violation of 18 U.S.C. § 1344, for which Defendant is charged. (*Id.* at ¶¶ 4-11.)

## II. LEGAL STANDARD FOR DISMISSAL

Defendant filed a Motion to Dismiss Count One of the Indictment pursuant to Federal Rules of Criminal Procedure Rule 12(b)(3)(B), which permits a defendant to file a motion that alleges a defect, or insufficiency, in the indictment. Pursuant to Fed. R. Cim. P. 7(c)(1), generally an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged..." In order for an indictment to be considered sufficient, first, it must set out all of the elements of the offense, second, it must "give notice to the defendant of the charges," and third, it must be "sufficiently specific" as to permit the defendant to plead double jeopardy if subsequently charged with the same crime. *United States v.McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (quoting *United States v. Douglas*, 398 F.3d 407, 413 (6th Circ. 2005)); *See also, United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). Accordingly, "an indictment is to be construed liberally in favor of its sufficiency," and must be "read as a whole" by which the Court accepts the factual allegations therein as true and in favor of the Government. *McAuliffe*, 490 F.3d at 531 (internal citations omitted).

Furthermore, if the indictment uses the statutory language of the offense to state the charge, then it is presumed to be sufficient as long as the statutory language "fully and unambiguously states all the elements of the offense." *McAuliffe, 490 F.3d at 531* (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)). Where the statutory language is relied upon to state the charge in the indictment, it must be supplemented with enough facts and circumstances to meet the aforementioned three-part requirements. *Id.* (internal quotation marks omitted).

## III. ANALYSIS

**A. Elements for bank fraud**

Count One charges Defendant to be in violation of 18 U.S.C. § 1344. The statutory language provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

There are three elements under this statute which the government must prove in order to obtain a conviction for bank fraud:

1. That the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution;

2. That the defendant did so with the intent to defraud;

3. That the financial institution was insured by the Federal Deposit Insurance Corporation.

*United States v. Warshak*, 631 F.3d 266, 312 (6th Cir. 2010)(quoting *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001)).

Defendant primarily takes issue with the Indictment's sufficiency of providing enough facts and circumstances in regard to element one, the scheme to defraud. The sufficiency of the Indictment in providing the nature of Defendant's scheme to defraud is discussed as follows.

4

**B. Defendant's scheme to defraud**

**B.1. Definitions and legal standards for the scheme to defraud**

Defendant contends Count One of the Indictment is insufficient to charge Defendant with a violation of 18 U.S.C. § 1344 because it contains "no description of the bank fraud scheme" which Defendant is alleged to have perpetrated. (ECF No. 44, at 4.)

Defendant relies on the Sixth Circuit Pattern Jury Instructions for the definition of a "scheme to defraud" which states,

> (A) A 'scheme to defraud' includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.
>
> (B) The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.

Sixth Cir. Pattern Instruction 10.01. By this definition, Defendant interprets § 1344 to require "a material false statement made to the bank" or a "knowing concealment of material facts" as part of a defendant's scheme to defraud. (ECF No. 44, at 6.) Defendant also cites to *United States v. Stone,* in which the Sixth Circuit ruled that a "scheme to defraud a financial institution does not require any evidence of an affirmative misrepresentation..." 954 F.2d 1187, 1191 (6th Cir. 1992). While Defendant asserts the ruling in *Stone* is in conflict with, and therefore undercuts, the Sixth Cir. Pattern Instructions, that assessment is inaccurate, when taking into further consideration other rulings by the Sixth Circuit.

In *Warshak,* upon which the government derives their definition of a scheme to defraud, (ECF No. 59, at 3), the Court used the language of part (A) of the Sixth Cir. Pattern Instructions, in finding that, "a scheme to defraud includes any plan or course of action by which someone intends to deprive another by deception of money... or property by means of false or fraudulent pretenses, representations, or promises." 631 F.3d at 310-11 (quoting *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)); *See also, United States v. Gold Unlimited, Inc*., 177 F.3d 472, 479 (6th Cir. 1999). The Court further explained that a scheme to defraud is not defined "according to a technical standard" but is measured against a standard of "moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.* at 311 (quoting *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir. 1979)). This definition, as stated in *Warshak*, provides the standard against which "false statements or assertions that concern a material aspect of the matter in question" which were "known to be untrue when made" by a defendant is measured. Sixth Cir. Pattern Instruction 10.01(B).

Furthermore, a violation of § 1344 occurs when the defendant, in an attempt to implement a fraudulent scheme, either, (1) causes a federally insured financial institution to transfer funds, or (2) exposes, or intends to expose, that institution to some degree of risk of loss. *Warshak,* 631 F.3d at 312. Defendant argues that Count One failed to allege that Defendant took part in any conduct that would have placed the bank at a "separate, distinguishable risk," (ECF No. 44, at 8), and cites *United States v. Lemons*, 941 F.2d 309, 316 n.3 (5th Cir. 1991) for authority. However, such is not the state of the law in the Sixth Circuit. *Warshak,* at 312-313. In order to have the intent required for committing bank fraud "the defendant need not have put the bank at risk of loss in the usual sense or intended to do so... Rather it is sufficient if the

defendant in the course of committing fraud on someone causes a federally insured bank to transfer funds under its possession and control." *Id.* at 313 (quoting *United States v. Everett,* 270 F.3d 986, 991 (6th Cir. 2001)).

Defendant further relies upon *United States v. Anderson* to argue that "[t]he execution of the fraudulent scheme is complete upon the movement" of funds from a bank, and all subsequent actions of spending those funds do not constitute as part of the scheme. 188 F.3d 886, 891 (7th Cir. 1999). However, unlike the issue presented now before this Court, the *Anderson* Court addressed a statute of limitations issue in regards to the bank fraud charge; which forced narrow and fact sensitive considerations of each particular act taken by the defendant and its classification as either an act of execution or a subsequent act. *Id.* at 888. Furthermore, the *Anderson* Court held that "the decision of whether an action is an execution of the criminal scheme will be fact intensive; there are several factors to consider, including, but not limited to, the ultimate goal of the scheme, the nature of the scheme, [and the] the benefits intended..." *Id.* at 889. This indicates the importance of analyzing and considering *all* events and circumstances surrounding, and in connection with, the entire scheme in order to properly assess which acts are in fact executions of the scheme to defraud. Here, Count One alleges that all actions as presented therein, were ones by which Defendant executed his scheme to defraud the banks.

### B.2. Sufficiency of Indictment

Given the definitions and rules of law concerning a scheme to defraud we turn to the language of the Indictment to determine if it meets the standards of sufficiency. The Indictment expressly adopts the language of 18 U.S.C. § 1344 in conjunction with the relevant facts and circumstances. Count One states, "[Defendant] willfully and knowingly devised and intended to

7

devise a scheme and artifice to defraud [FDIC backed] institutions including First Merit Bank and others with the intent to obtain money, [etc.] or other property owned by, or under the control of such institutions, by means of false and fraudulent pretenses, representations, and promises." ( R.3, Count 1, ¶ 4.) Following that assertion, the Indictment then lists the alleged overt actions of Defendant, as provided above (pp. 1-2), which describes the course of action taken by Defendant to cause the transfer of funds by the banks. As alleged in Count One, Defendant first obtained, through his company, five loans from an federally-backed bank which were restricted to use for business purposes only; and then, transferred those funds to his personal account and other entities for various purchases and money-making schemes which are inherently beyond the scope of business uses. Examples of those schemes include profiting from purchasing and re-selling vehicles and purchasing a condominium.

     Defendant further contends that the scheme to defraud as provided in Count One is insufficient, however, because while it states that the loaned funds were to be used only for business purposes, it "does not allege or explain how [Defendant] did not use the funds for business purposes." (ECF No. 44, at 8.) Also, Defendant asserts that the Indictment does not "describe any material false statements or assertions or concealment of material facts by [Defendant] in order to obtain the loans;" or deceitful or dishonest advantages taken by Defendant in procuring the loans. (*Id.*) However, Defendant's contention lacks merit since it is unnecessary for the Indictment to be so narrowly construed. In regards to an indictment for bank fraud under 18 U.S.C. § 1344, it is not found to be "fatally insufficient" so long as the facts alleged in the indictment, when taken to be true in favor of the Government, "warrant the *inference*" of such necessary elements as misrepresentation and materiality. *McAuliffe*, 490 F.3d

at 531-32 (citations omitted)(emphasis added). Here, Count One provides enough substantial facts and circumstances of events to warrant the inference of misrepresentation and materiality.

Count One alleges that the loan agreements were made between First Merit Bank and Smith & Johnson Construction Company, and more specifically, that "[e]ach of the business loan agreements stated that the proceeds of the loan shall only be used for the business operations of Smith & Johnson." (Indictment, R. 3, ¶ 3.) Count One then states that all of those loan agreements were signed by Defendant on behalf of Smith & Johnson. Taking these facts to be true, it can be inferred that the condition upon the use of the loans was material to approving the transaction. Also, the facts in Count One support an inference that Defendant did not have the intention of using the loans for the agreed to use, but rather for personal expenses and operations as indicated by the break-down of the alleged overt acts. It can be inferred that each paragraph in Count One of the Indictment under the sub-heading of "Scheme to Defraud" is alleging that Defendant's actions do not constitute business related uses of the loaned funds, since each paragraph begins with the preface, "It was further part of the scheme and artifice to defraud that the defendant..." (R. 3, Count 1, ¶¶ 5-11.) Furthermore, the Indictment provides the dates of each loan agreement as well as the actual and approximate dates of all the alleged actions, from which it can be inferred that it was Defendant's intentions to execute a scheme to defraud at the time of obtaining such loans. Based on these facts, and taken as a whole, and in favor of the Government, Count One warrants an inference of misrepresentation and materiality.

The scheme to defraud is plainly laid out as such in Count One, and incorporates the statutory language of 18 U.S.C. § 1344 with substantial facts and circumstances to provide Defendant with clear notice of the acts that constitute the charged offense. Taking into

consideration Count One as a whole and construing the facts alleged by the Indictment to be true in favor of the Government, the Indictment provides enough facts and circumstances to sufficiently describe the nature of the scheme to defraud.

### C. Legal sufficiency of Indictment

Count One of the Indictment meets the three-part requirements test under Fed. R. Cim. P. 7(c)(1). As established already above, the elements of the offense are sufficiently addressed in Count One, including a sufficient description of the nature of the scheme to defraud. The Indictment expressly adopts language that resembles the statutory text of the offense, and even includes an explicit citation to the statute. ( R. 3, Count 1, at 4.) Given the sufficiency of the Indictment's language, Defendant is put on fair notice of the charges against him and the alleged acts which constitute such charge. The facts and circumstances alleged in Count One which constitute the scheme to defraud and violation of the statute, are specific enough, given the descriptions and dates provided, to allow Defendant to plead double jeopardy if subsequently charged with the same crime.

## IV. CONCLUSION

Count One meets the minimum level of sufficiency required by Fed. R. Crim. P. 7(c)(1), as well as the legal standard in regards to the description of the scheme to defraud as a required element of the charge. For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Count One of the Indictment which is for Bank Fraud. (ECF No. 44.)

**IT IS SO ORDERED**.

        **/s/ Gregory L. Frost**
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**